IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

DARRYL KEVIN C.,

                Plaintiff,

    v.                                        Civil Action No.
                                                  5:17-CV-0507 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

---

APPEARANCES:                            OF COUNSEL:

FOR PLAINTIFF:

DOLSON LAW OFFICE               STEVEN R. DOLSON, ESQ.
124 North Salina Street
Suite 3B
Syracuse, NY 13202

FOR DEFENDANT:

HON. GRANT C. JAQUITH           PETER W. JEWETT, ESQ.
U.S. Attorney for the               Special Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Acting Commissioner, pursuant to 42 U.S.C. § 405(g), are cross-motions for judgment on the pleadings.[1] Oral argument was conducted in connection with those motions on September 28, 2018, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Acting Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

ORDERED, as follows:

(1)  Plaintiff's motion for judgment on the pleadings is GRANTED.

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

(2) The Acting Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

(3) The matter is hereby REMANDED to the Acting Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

(4) The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Acting Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

David E. Peebles
U.S. Magistrate Judge

Dated: September 28, 2018
Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DARRYL C.,

                                        Plaintiff,

-v-                                     5:17-CV-507

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
------------------------------------------------------------x
```

## TRANSCRIPT OF PROCEEDINGS
## BEFORE THE HONORABLE DAVID E. PEEBLES

September 28, 2018
100 South Clinton Street, Syracuse, New York


For the Plaintiff:

    LAW OFFICES OF STEVEN R. DOLSON
    126 North Salina Street
    Suite 3B
    Syracuse, New York 13202
    BY: **STEVEN R. DOLSON, ESQ.**

For the Defendant:

    SOCIAL SECURITY ADMINISTRATION
    26 Federal Plaza
    Room 3904
    New York, New York 10278
    BY: **PETER W. JEWETT, ESQ.**


*Hannah F. Cavanaugh*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

1          (In chambers, counsel present by telephone.  Time
2  noted:  10:16 a.m.)
3          THE COURT:  I have before me a request for a judicial
4  review of an adverse determination by the Acting Commissioner of
5  Social Security pursuant to 42, United States Code, Section
6  405(g).
7          The background is as follows:  The plaintiff was born
8  in August of 1964.  He was 49 years old at the alleged onset
9  date and 51 years of age at the time of the hearing in this
10 matter.  The plaintiff stands 5'8" in height and weighs
11 200 pounds.  He lives with his wife and three children.  At the
12 time of the hearing they were ages 19, 16, and 12.  He lives in
13 North Syracuse.  Plaintiff is ambidextrous.  He's a high school
14 graduate.
15         Plaintiff last worked in July of 2013 with the
16 exception of the driving, which we'll talk about in a moment.
17 He worked as a warehouse worker for Rite Aid, a position that he
18 began in February of 1989.  Plaintiff was laid off from work and
19 drew unemployment.  According to Administrative Transcript pages
20 43 and 214, plaintiff drove for approximately one month for a
21 medical transport company in 2014 and 2015, but they stopped
22 calling him.
23         Physically, plaintiff suffers from degenerative disc
24 disease at the cervical and lumbar levels, ankylosing
25 spondylitis -- which I will not try to pronounce -- rheumatoid

arthritis, osteoarthritis, asthma, sleep apnea, hypothyroidism, hypertension, and obesity. Plaintiff has treated with several sources, Stephan Alkins for his sleep apnea; James Blanchfield, who apparently is his general physician. He also treated at Arthritis Health Associates from September 2013 to August 2015, at least for his rheumatoid arthritis, including with Physician's Assistant April Summerfield and Dr. Ramzi Khairallah.

He has been to Total Chiropractic of North Syracuse with Dr. Scott Kozlowski from August 2013 to October 2014. He has undergone physical therapy at Crouse Hospital, October 2013 to April 2014. He has seen Syracuse Gastroenterological Associates for his pancreatic condition, and Internist Associates James Blanchfield, who I mentioned earlier, and Dr. Collin Harris, who issued a medical source statement in May of 2012. It's unclear what his treatment relationship was with the plaintiff.

Plaintiff has been prescribed various medications, including Advair, Asmanex, Humira, Meloxicam, Prednisone, Symbicort, and Synthroid. Daily activities of the plaintiff includes cooking, cleaning, laundry, shopping, showering, watching television, listening to the radio, reading. He mows his lawn, he walks three times a week, visits family and friends, and goes to church weekly. That's at page 237 and 547 of the Administrative Transcript.

Procedurally, plaintiff applied for Title II disability insurance benefits on March 20, 2014, alleging an onset date of July 15, 2013.  A hearing was conducted by Administrative Law Judge Marie Greener on October 19, 2015.  ALJ Greener held a supplemental hearing with a vocational expert on -- I can't read my notes -- either January or February 21, 2016 -- it's actually January 21, 2016.  On February 22, 2016, Administrative Law Judge issued an unfavorable decision, which became a final determination of the agency on March 29, 2017, when the Social Security Administration Appeals Council denied plaintiff's request for a review.  In her decision, ALJ Greener applied the five-step sequential test for determining disability after concluding that he was insured through December 31, 2018.

At step one, she concluded plaintiff had not engaged in substantial gainful activity since July 15, 2013, although she noted that he did briefly work as a driver.

At step two, ALJ Greener concluded that plaintiff suffers from severe impairments, including degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine with herniated nucleus pulpous contacting the right S1 nerve root, and ankylosing spondylitis.  At page 24 -- and I won't recite them all -- ALJ Greener rejected a host of other conditions, including, significantly, rheumatoid arthritis suffered by the plaintiff claiming that there is no indication in the record that they rose to a level of a severe impairment,

1  which would significantly limit plaintiff's ability to perform
2  basic work functions.
3      At step three, the ALJ determined that the
4  plaintiff's conditions did not meet or medically equal any of
5  the listed presumptively disabling impairments set forth in the
6  Commissioner's regulations, specifically considering listing
7  1.04.  She then surveyed the record and determined that despite
8  his conditions, plaintiff essentially retains the residual
9  functional capacity to perform unskilled light work with
10 exceptions, including a provision for alternating positions
11 between sitting and standing throughout the workday and only
12 occasionally stoop and frequently reach.
13     At step four, plaintiff, she concluded, could not
14 perform his past relevant work as a warehouse worker.  It
15 exceeds the exertional limitations of the RFC.
16     At step five, after determining that if a full range
17 of light work could be performed by the plaintiff, the
18 Medical-Vocational Guidelines or the grids would prescribe a
19 finding of no disability, and that would be grid Rules 202.20
20 and 202.13.  ALJ Greener then consulted with a vocational
21 expert, and based on the vocational expert's testimony,
22 concluded that plaintiff can perform the functions of a
23 photocopy machine operator, an order caller, and a router, all
24 three being light SVP 2 positions and, thus, concluded that
25 plaintiff was not disabled at the relevant times.

```
 1            As you know, my task is limited to determining
 2   whether the correct legal principles were applied by the
 3   Administrative Law Judge and the determination is supported by
 4   substantial evidence.  It is an extremely deferential scope of
 5   review.
 6            In terms of context, in addressing the arguments, I
 7   bear in mind that plaintiff bears the burden of proof through
 8   step four, including at the residual functional capacity stage,
 9   but at step five, the burden shifts to the Commissioner to
10   determine that plaintiff is capable of performing work available
11   in the national economy.
12            First, I'll talk about the treating source statement
13   of Dr. Blanchfield.  It is true that ordinarily the opinion of a
14   treating physician concerning the nature and severity of an
15   impairment is entitled to considerable deference, provided it is
16   supported by medically acceptable clinical and laboratory
17   diagnostic techniques and not inconsistent with other
18   substantial evidence.  Dr. Blanchfield's medical source
19   statement contains opinions that are extremely limiting and,
20   frankly, not supported by the record evidence.  For example, at
21   652, question 12, how many city blocks can your patient walk
22   without rest or severe pain?  He notes zero, which is contrary
23   to plaintiff's own statements indicating that walking is one of
24   his hobbies and that walking is not affected by his conditions,
25   and those are at pages 459 and 491.
```

1          The limitation to ten percent use of hands is not
2   well supported, as well, and contrary to plaintiff's ability to
3   drive as indicated in his self-report and based on the fact that
4   he did, in fact, engage in limited driving for a living briefly,
5   but that's not to say that the entirety of Dr. Blanchfield's
6   opinion should be rejected.
7          The two major issues here, in my view, are the
8   treatment of plaintiff's neck condition and hand condition.  In
9   terms of neck, the X-rays in the records support the existence
10  of a condition which could reasonably be limiting in the ability
11  to maneuver the plaintiff's head.  Dr. Jenouri notes limitations
12  in plaintiff's range of motion during his consultative exam.
13  The plaintiff notes some limitations at 459 and 491 in his
14  ability to maneuver his head.  The Administrative Law Judge
15  found at step two that his cervical degenerative disc disease
16  did constitute a severe impairment, and Dr. Blanchfield
17  indicates that plaintiff can only occasionally turn his head and
18  look up at page 64.
19         I agree with plaintiff's counsel that there should
20  have been a fuller discussion and consideration of any neck
21  limitations, and any such limitation should have been included
22  in the RFC upon which the vocational expert based his opinions.
23  And I agree that this case is, to a large degree, controlled by
24  District Judge Suddaby's decision in *Hopkins vs. Commissioner of*
25  *Social Security* at 2015 WL 4508630 from July 13, 2015, and I'm

```
 1  unable to conclude with certainty based on Hopkins that this
 2  would constitute a harmless error.
 3           I also think that there should have been a discussion
 4  of plaintiff's rheumatoid arthritis and the affect on his
 5  ability to perform fine manipulation and use his hands.  It is
 6  true that Dr. Jenouri did find grip strength 5/5 and hand and
 7  finger dexterity intact at 549, but that occurred in April of
 8  2014 and it was, therefore, considerably earlier than Dr.
 9  Blanchfield's opinions in September of 2015.  As counsel
10  indicated, the rheumatoid arthritis appears to be a degenerative
11  condition, as indicated at page 638, for example, which showed
12  moderate degenerative changes in the hands in December of 2014.
13  There's considerable evidence in the record to address the hands
14  at page 392.  In September 2013, Dr. Khairallah made the
15  statement that plaintiff's hands continued to bother him and
16  affect his daily activities and ability to work.  Similarly, at
17  page 386, the doctor makes the same statement.
18           At page 385, in November of 2013, PA Summerfield
19  notes both severely limited range of motion of the cervical
20  spine and osteoarthritic changes in the hands.  At page 559 on
21  March 19, 2014, Physician's Assistant Summerfield notes
22  degenerative changes in the hands, as well as the limited motion
23  of cervical lumbar spine.  And at page 643, September 17, 2014,
24  Physician's Assistant Summerfield notes degenerative changes in
25  the hands, as well as the moderate limitation of range of motion
```

HANNAH F. CAVANAUGH, Official Court Reporter
(315) 234-8545

1  of the cervical spine.
2         There's really little discussion of the ability to
3  use the hands in the Administrative Law Judge's decision.  Both
4  the neck and hand conditions could well have considerable impact
5  on the RFC finding and the vocational expert's opinions.  And so
6  although I think that there's conflicting evidence, and it could
7  well be that after this is reviewed that it's determined that
8  the plaintiff is not disabled, I think a more robust discussion
9  to permit meaningful judicial review is necessary.
10        So I will grant judgment on the pleadings to the
11 plaintiff.  I don't find persuasive evidence of disability, and
12 so there will be no directed finding.  I'll remand the matter to
13 the Commissioner for further proceedings consistent with this
14 opinion.
15        Again, thank you both for excellent presentations.
16 Have a good weekend.
17        MR. DOLSON:  Thank you, your Honor.
18        MR. JEWETT:  Thank you, Judge.
19        (Time noted:  10:32 a.m.)
20
21
22
23
24
25

1
2  CERTIFICATE OF OFFICIAL REPORTER
3
4
5       I, HANNAH F. CAVANAUGH, Official Court Reporter, in and
6  for the United States District Court for the Northern District
7  of New York, DO HEREBY CERTIFY that pursuant to Section 753,
8  Title 28, United States Code, that the foregoing is a true and
9  correct transcript of the stenographically reported proceedings
10 held in the above-entitled matter and that the transcript page
11 format is in conformance with the regulations of the Judicial
12 Conference of the United States.
13
14       Dated this 28th day of September, 2018.
15
16            x *Hannah F. Cavanaugh*
17              HANNAH F. CAVANAUGH
18              Official U.S. Court Reporter
19
20
21
22
23
24
25